[S. C., Ante, 1.]
MR. Miller presented a petition for a rehearing, a copy of which had been served on the counsel for the complainant, or, in lieu thereof, the original had been left with them. In the petition, it was stated that the cause ought to be reheard because the Court had erred in declaring the lands in question liable to a fi. fa. at all; and secondly, because the second fi. fa. on which a seizure had been returned was not produced. He argued these points with great ingenuity and ability. The opinion of the Court takes notice of each point.
If these lands were liable to satisfy the plaintiff's debt, it can not be correct to say that they ought to be subjected to a decree in equity, being a trust or equitable estate, and ought not to be subject by a fi. fa. If not liable at law, equity could not subject them merely because the estate was an equitable one. It could not, we think, subject an equity of redemption, or the trust of a term; because equity ought not to extend the contract of the parties to subjects not looked to or depended upon when entered into, nor go beyond the law. It could only facilitate the remedies provided by the law for the attainment of a legal object; and it would be greatly inconvenient if, being liable, the fi. fa. would not reach *Page 57 
them, for the judgment is no lien upon them, and then, at any time after judgment and before a decree in equity, to subject a trust estate, the owner might make a valid sale, as the owner of a chattel may, before fi. fa. and after judgment. He might defeat the creditor, which he could not do if bound by the fi. fa. If the cestui que trust before the fi. fa. sells the trust by assignment of the bond for title, or otherwise, the purchaser at sheriff's sale is in no worse situation than if he purchase lands in fee, which have been sold before the judgment, and without coming to his knowledge. It is true that the act of 29th Charles II. has a clause directing the creation of trusts to be in writing; but it is also true that resulting trusts are excepted in that clause; and that the clause for subjecting trusts to execution uses the words, "in any manner or wise subject to a trust," which comprehends all trusts, and all unexecuted uses, no matter whether arising by express declaration or resulting by implication of law. And so it is laid down, 2 Bl. Com. 332. If all real estates liable in England to be extended are liable to be sold by the 5th of George II. c. 7, then it is no objection that the trust is implied by law. Suppose, however, this clause of the act of 29th of Charles II. not to be in force here; what shall we make of the words "real estate," in the statute of George II.? "Houses, negroes, lands tenements, hereditaments, and real estate." says the statute, "shall be liable." Does not the term real estate signify something different from lands, tenements, and hereditaments? And what could it be but trusts unexecuted by the statute of Henry VIII.?Maledicta est interpretatio quae corrumpit textum, as every interpretation does which either makes the words "real estate" signify the same that was already expressed by the preceding words, or not comprehend trusts, when none but these are left out of the scope of former terms. Trusts, then, or unexecuted uses, were liable by this act, without the aid of the 29th of *Page 58 
Charles II., and might be sold by a fi. fa. It is argued that 1777, c. 1, sec. 23, where process against goods and chattels is extended to lands and tenements also, was not meant of executions issued by justices of the peace, as appeared by sec. 69, but of process by attachment, to include the real estate of absentees. We need not dwell upon this doubt, for certainly this is a clear position, that executions are, by the same clause, also directed to issue against lands and tenements, which did so formerly, and that must have been under the act of George II. in the year 1732, and extended to all cases of liability under that act. We can not perceive any reason therefore for changing the opinion before given upon this point. Next, as to the second fi. fa. not having been, produced, but only recited in the copy of the record read to the Court. Will the Court require that which it is impossible to produce, founding itself upon that regular practice which the English books and cases are founded upon, and which require that which by their practice does exist? And shall we, by adhering to such requisitions, destroy all the sales made under such irregular practice? Or shall we take notice of it, and know judicially that certain things, if required, can not be had, and therefore do without them, for the sake of realizing sales made under the authority of the law, and of the courts of justice by the proper officers? We think the latter course ought to be adopted; and we know that it has been usual to issue an aliasfi. fa., and that too by writing alias on the back of the first, without making out a new one. The sheriff could not refuse to execute it; he would be fined for such refusal. He was bound to sell under it; the clerk, therefore, can only set out one verbatim
in his copy of the record; that he has done in the present instance. Suppose A. obtain a judgment against B., thereby binding his real estate, and B. sell his land to C. and then A. take out execution, and the lands are sold to D., who sues C. to *Page 59 
recover the lands, he must produce the deeds, the fi. fa.,
and the judgment to show a relation of his title to the judgment, which was precedent to C.'s deed; and suppose this was a fi.fa. from the courts of North Carolina before our separation, or of the Franklin government, no judgment was ever entered. None can be produced. Will we not take notice of it, what in those days passed for it? If not, we would destroy this and many other sales made in those times, both of real and personal estate. In this case also, there is but little danger of being deceived. The return to the alias fi.fa. is set out verbatim, not by recital, and it is stated verbatim also, in the venditioni exponas, not historically by the clerk; that seems so near to the production of thefi. fa. itself as to leave no doubt of its having existed in some shape or other. There is no cause, therefore, for changing our opinion on this point, and the petition of a rehearing must be dismissed.